UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>FRANCISCO GONZALEZ ,<br><br>Defendant. | Case No.:  14-CR-1445-L-1<br><br>**ORDER DENYING MOTION FOR MODIFICATION OF TERM OF IMPRISONMENT PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)) [ECF NO 46.]** |

Petitioner Francisco Gonzalez ("Petitioner"), proceeding *pro se*, filed a motion for relief of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) requesting a reduction in the term of his custodial sentence to time-served based on the threat posed by the COVID-19 pandemic and his underlying health conditions. (Motion [ECF NO 46.])  The Government filed a Response and Opposition to the Motion on March 22, 2021.  (Oppo. [ECF No. 49.]) Defendant filed a Reply on April 26, 2021.  (Reply [ECF No. 54.]) Defendant's Motion is denied for the following reasons.

I. **BACKGROUND**

Petitioner pled guilty to one count of possession of methamphetamine with intent to distribute in violation of 18 U.S.C. §§ 841(a)(1) contained in a Superceding Indictment.  On April 14, 2015, this Court sentenced Petitioner to 120 months in the custody of the Bureau of Prisons, with a 5-year term of supervised release to follow.

1

Defendant is incarcerated at United States Penitentiary Canaan ("Canaan") and, as of March 1, 2021, had served about 82 months of the original sentence. Defendant is expected to be released on good time credit on May 13, 2023.

II. **ANALYSIS**

A court may modify a defendant's sentence "after considering the factors set forth in § 3553(a) to the extent applicable" if it finds that (i) "extraordinary and compelling reasons warrant the reduction;" (ii) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)"; and (iii) "the reduction is consistent with this policy statement." § 3582(c)(1)(A)(i); U.S.S.G. § 1B1.13. The First Step Act was enacted in December 2018, with the stated intention of increasing the availability and use of compassionate release for certain individuals. *See* Pub. L.No. 115-391 § 603(b)(titled "INCREASING THE USE AND TRANSPARENCY OF COMPASSIONATE RELEASE"). Importantly, the Act paved the way for defendants to file compassionate release motions directly with the court, as opposed to relying on the Bureau of Prisons ("BOP") to file those motions on their behalf. *Id*.

*A. Exhaustion of Administrative Remedies*

A court may modify a defendant's sentence "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); Pub. L.No. 115-391, 132 Stat. 5194, §603.

The Government argues that Defendant has not alleged, or provided evidence, that he filed a request for relief from the warden, nor has a request for documentation from the facility demonstrated any request for compassionate release made to the warden. (Oppo. at 10). Defendant responds that he was not required to exhaust administrative remedies, and cites *United States v. Zukerman*, 451 F.Supp. 3d 329 (S.D. New York, April 3, 2020), *United States v. Zullo*, 976 F.3d 228 (2nd Cir. 2020) and *United States v. Gunn*, 980 F.3d 1178 (7th Cir. 2020) in support. (Reply at 2).

Administrative exhaustion is mandatory before a court may consider the merits of a petition under section 3582. *United States v. McGreggor*, 2020 WL 9602344 (9th Cir. Oct. 26, 2020)("[M]andatory exhaustion statutes ... establish mandatory exhaustion regimes, foreclosing judicial discretion."(internal citations omitted).) Here, Defendant has not provided evidence that he presented his request to the warden, instead contending that the exhaustion requirement should be waived. (Reply at 3-4). The cases Defendant cites are not binding on this Court, and do not provide support for his request. In *Zukerman*, the district court excused the exhaustion requirement for a 75-year-old defendant with significant underlying health issues who sought compassionate release. *Zukerman*, 451 F.Supp. 3d at 333. The court relied on Second Circuit authority which held that the exhaustion requirement is not absolute where a defendant can demonstrate exhaustion would be futile, the process would be incapable of granting adequate relief, or exhaustion would subject the defendant to undue prejudice. *Id*. While informative, *Zukerman* is not binding authority, and even if it was, the case does not assist Defendant who has not demonstrated similar circumstances.

The additional cases Defendant cites, *Zullo* and *Gunn*, address the applicability of the Sentencing Commission's policy statement to the determination of extraordinary and compelling reasons, not the exhaustion requirement. *Zullo*, 976 F.3d at 237; *Gunn*, 980 F.3d 1181. Therefore, even if they were binding authority, they are not helpful to Defendant. Defendant has not satisfied the exhaustion requirement under § 3582, therefore, the motion may be dismissed on these grounds.

B.   *Extraordinary and Compelling Reasons*

Even if Defendant had exhausted his motion, or the exhaustion requirement was waived, he cannot prevail on the merits of his motion.

Defendant argues that the Court should grant his request because he has high blood pressure, high cholesterol, breathing problems, hyperlipidemia, and is obese, all of which greatly increases his chance of serious illness or death from COVID-19. (Mot. at 8). He

14-CR-1445-L-1

contends these medical conditions constitute "extraordinary and compelling reasons" for the relief he seeks. (Mot. at 1).

The Government opposes Defendant's request, arguing that his medical records do not indicate he has any current issues with "untreated high blood pressure, high cholesterol, breathing problems, or hyperlipidemia." (Opposition at 11). The Government agrees that Defendant's obesity qualifies as an "extraordinary and compelling reason," but notes that many courts have concluded that obesity on its own, is not sufficient to qualify as an extraordinary and compelling reason to grant relief. (*Id*. at 11-13). In addition, Defendant has now been fully vaccinated against COVID-19, therefore, the Government argues that his chances of acquiring the virus or suffering severe consequences if he does get the virus, are significantly reduced. (*Id*. at 14-15).

The Ninth Circuit recently held in *Aruda*, that section 1B1.13 "may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant," even though it is no longer considered a binding policy statement regarding the criteria that qualify as "extraordinary and compelling reasons." *See United States v. Aruda*, 2012 WL 1307884 (9th Cir. April 8, 2021). The Court looks to the Policy Statement for guidance. First, a defendant who is suffering from a terminal illness, such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia" may qualify. U.S.S.G. § 1B1.13, cmt. n.1 (A)(i). Second, a defendant can meet the standard if he or she is:

> (I) suffering from a serious physical or medical condition,
> (II) suffering from a serious functional or cognitive impairment, or
> (III) experiencing deteriorating physical or mental health because of the aging process,
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G § 1B1.13, cmt. n.1(A)(ii). Third, a defendant may qualify on the basis of age if he or she is (1) at least 65 years old; (2) experiencing "a serious deterioration in physical

or mental health because of the aging process"; and (3) has served at least 10 years or 75% of the sentence, whichever is less. U.S.S.G. §1B1.13, cmt. n.1(B). Fourth, certain family circumstances may be considered extraordinary and compelling. U.S.S.G. § 1B1.13, cmt. n.1(C). Last, the Commission provides that the BOP may identify "other reasons" that qualify as "extraordinary and compelling" reasons "other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 cmt. n.1(D).

According to the CDC, individuals who are categorized as obese have an increased risk of severe illness with COVID-19, and "[t]he risk of severe COVID-19 illness increases sharply with elevated BMI." [1] The CDC defines obesity as a BMI of 30 or higher, and further classifies obesity of a BMI of 40 or higher as Class 3, "severe" or "extreme."[2] Defendant is 68 inches tall and weighed 228 pounds on March 10, 2021, resulting in a Body Mass Index (BMI) of approximately 34. (Gov. Ex 1 at 1). Although BMI can be an indicator of a defendant's vulnerability to severe illness from COVID-19, it is not necessarily an accurate reflection of a defendant's overall risk. As other courts have reasoned, obesity on its own, without any medical conditions resulting from the elevated BMI, can be insufficient to demonstrate extraordinary and compelling reasons to grant relief. See *United States v. Santillan-Lares*, 18cr4935 BTM (S.D. Cal October 7, 2020)(where records "support only the obesity diagnosis but none of the other conditions alleged… [t]he Court accordingly does not find extraordinary and compelling reasons justifying release); *United States v. Weller*, 12cr5154 W (S.D. Cal. November 20, 2020)(obesity "with no other serious resulting conditions, fails to persuade the Court that it qualifies as 'extraordinary and compelling'"); *United States v. Ocegunda,* 12cr509 CAB

---

[1] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#obesity

[2] See https://www.cdc.gov/obesity/adult/defining.html.

(S.D. Cal. January 27, 2021)(obesity with hypertension did not qualify where "[t]here is no indication that [defendant's] excess weight has caused any additional medical issues or has had an adverse effect on her overall health"); *United States v. Tranter*, 471 F.Supp. 3d 861 (N.D. Ind. July 8, 2020)("Tranter has identified no current medical issues resulting from his obesity, indicating to the Court that it has little adverse effect on his overall health.")

      A review of Defendant's medical records indicates that he is a 39-year-old male with no untreated medical conditions that would put him at a higher risk of serious illness or death from COVID-19, other than his obesity. In addition, he has been fully vaccinated against the COVID-19 virus. Defendant argues that although he has been vaccinated, the prison environment makes social distancing impossible and that it is "only a matter of time before [he] is contaminated." (Reply at 3.) The COVID-19 vaccine provides significant protection against contracting the virus and lessens symptoms for those who still get the virus, which eliminates the risk of serious illness or death to Defendant now that he has been fully vaccinated. See CDC, *When You've Been Fully Vaccinated*, available at https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated.html. Although Defendant's obesity is a factor the Court considers, it is insufficient to qualify on its own as an extraordinary and compelling reason to grant relief under these circumstances.

      B. *Danger to the Community*

      The Court must also determine whether granting Defendant's request would result in a danger to "any other person or to the community." 18 U.S.C. § 3142(g). The Court makes this assessment by addressing the factors set forth in § 3142(g), including, among other things: (1) the nature and circumstances of the offense charged; (2) the history and characteristics of the person, including character, physical and mental condition, family ties, employment, financial resources, past conduct, criminal history, and drug and alcohol abuse; and (3) the nature and seriousness of the danger to any person or the

6

14-CR-1445-L-1

community that release would impose. 18 U.S.C. § 3142(g). The Court considers each in turn.

Defendant claims that he has maintained strong family and community ties while incarcerated, he has logged over 700 hours of education, earned his GED, become proficient in English, and is now a "matured man who poses no risk to the community." (Mot. at 8). He plans to live with his mother, wife and children if granted relief. (*Id*.)

The Government argues that Defendant poses a danger to the safety of the community because he has gang affiliations, is in the highest criminal history category, and had poor performance on supervision. (Oppo. at 16).

Defendant was convicted in the present case for possession of methamphetamine with intent to distribute, an extremely dangerous controlled substance. Between 2000 and 2010, Defendant was arrested for multiple crimes, including carjacking, robbery, battery, vandalism, possession of a firearm by a felon, and possession of paraphernalia used for narcotics, among others. (PSR at 8-12). Defendant was also affiliated with the Mission Bay Locos gang. (*Id*. at 9). In 2009, Defendant was convicted of possession of methamphetamine and drug paraphernalia, which resulted in prison time after probation was revoked. (PSR at 11).

As a general matter, drug trafficking creates a danger to the community, not only through the distribution of addictive controlled substances, but also tangentially through the potential for crimes committed by addicts to support their habits. *United States v. Lopez-Ontiveros*, No 15cr575 GPC (S.D.Cal. October 6, 2020); *United States v. Banuelos*, No. 16cr1008 BAS (S.D. Cal. October 23, 2020). Defendant's conviction for importation of methamphetamine is a non-violent drug offense, however, he has a history of violence, a factor this Court considers. Defendant also has a history of drug use and gang affiliation. He has not been successful on probation in the past. He also notes that he has had a clean prison record since 2018, indicating struggles with prison discipline up to that point. Weighing the above factors, the Court finds that Defendant would be a danger to the safety of other persons or to the community upon release.

### C. § 3553(a) Factors

Under Section 3553(a), a sentencing court must impose a sentence that is "sufficient, but not greater than necessary, ... (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]" 18 U.S.C. § 3553(a)(2)(A)-(D). In addition to other factors, the sentencing court must also consider, "the nature and circumstances of the offense and the history and characteristics of the defendant" and the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]" § 3553(a)(1), (6). Section 3142(g) encompasses some of these factors, as noted above.

Defendant argues that the 3553(a) factors weigh in favor of the Court granting his request for a time-served sentence because he has rehabilitated himself during the more than nine years he has been confined. He has completed over 700 hours of education, achieving his GED, and developing business skills. (Mot. at 8). He has been a facilitator for Alternative to Violence Project seminars, and has been a volunteer tutor to other men. (*Id*.) Defendant states that he was endorsed for the RDAP program in June 2020, but has been unable to participate due to the COVID-19 pandemic. (Reply at 5).

In response, the Government argues that the §3553(a) factors do not support a sentence reduction, noting that Defendant has had gang affiliations, is in the highest criminal history category of VI, and that he needs to participate in the RDAP program for its important rehabilitative benefit. (Oppo. at 8).

As noted above, Defendant's conviction for possession of methamphetamine with intent to distribute involved an extremely dangerous controlled substance. In addition, Defendant was previously affiliated with a street gang, and his criminal history garnered him the highest score possible, a VI. Defendant is to be commended for the completion of his GED, becoming proficient in English, and finishing a significant number of education

courses while incarcerated. In addition, his participation in the Alternative to Violence Project and tutoring other inmates indicates a path to leadership roles. As Defendant notes, he has now been approved for the RDAP program, a significant step in his rehabilitation. If the Court were to sentence him to time-served at this time, he would miss out on this important rehabilitative opportunity. While Defendant has made great strides in his education and leadership roles, the Court must balance the need for rehabilitation against the need for sufficient punishment for the offense. Accordingly, the Court finds that reducing Defendant's sentence to time-served is not supported by the §3553(a) factors.

### III. CONCLUSION

For the foregoing reasons, the Court **DENIES** Petitioner's motion without prejudice.

**IT IS SO ORDERED.**

Dated: July 1, 2021

Hon. M. James Lorenz
United States District Judge